Good morning, your honors, and may it please the court. My name is Joanna Silver and I represent the appellant, Denita Hill. The obstruction of justice guideline does not apply simply because a sentencing court determines that a defendant lied or destroyed evidence. Rather, a court must make specific factual findings to support specific legal standards that are set forth in the guideline and the accompanying application notes. In this case, the district court failed to make the required factual findings. If they're obvious in the record, do they have to be made specific? They do. What if they're obvious in the record? They do. The court has to make findings and has to actually say what legal standards are applying for each type of conduct. Because the application notes, if you go through them, they're very, very specific about what standard applies depending on what the defendant did. Destruction of evidence. Destruction of evidence, I'd be happy to address that. Lying to an investigator. Yes. Your honor, I could address destruction of evidence first if you'd like. Sure, sure. That standard is set forth in application note 4D. And that is a fairly broad statement which says that destruction of evidence that is material to an official investigation constitutes obstruction of justice. But it has two specific exceptions. And the first is that destruction that's contemporaneous with the rest. So that traditional situation where the police are knocking on the door, flushing drugs. You actually need more than materiality. You need to prove that that action of flushing the drugs materially hindered the prosecution or investigation. And then the second exception, which I argue applies in our case, this applies to all obstructive conduct, is that obstruction that occurred prior to the start of the investigation may only be covered if it was purposefully calculated and likely to have thwarted the investigation or prosecution in this case. So those were the findings that the district court had to make in this case. So why does the second exception apply here? Why does it apply here? Well, first of all, I think that the evidence in this case is basically silent as to when the check reissuance paperwork, which is the evidence at issue here, was removed or destroyed. And there's absolutely no evidence that it was removed or destroyed as the investigation was starting or afterwards. And so I think the only factual finding that would not be clearly erroneous is that it was removed before the investigation began. And that is why that really heightened standard of having to prove that not only did she intend to thwart the investigation, but that her actions were likely to have thwarted the investigation applies. And I think this is a heightened standard. Is your argument that the evidence would not support a finding, or is it simply that the findings were not made as you suggest they have to be made? Both, Your Honor. Both. The court did not make the findings that it needed to make. And it didn't even identify the correct legal standard. So it's two different things. It didn't identify which legal standard it's going to be using, and then it didn't make the required factual findings for that standard. So you'd be satisfied if we sent it back and say make specific findings for us? I would prefer that the court not do that because I believe the record doesn't support the finding. I bet you would. I bet you would. But yes, I mean, that is definitely our alternative request is that this case, this sentencing was procedurally unreasonable. I mean, the court did not follow the law in the guideline and did not identify. I handed down dozens upon dozens of obstructions and enhancements, and it seems to me fairly clearly this case, at least factually, falls absolutely squarely in obstruction of justice. And I think respectfully, Your Honor, that is the problem here. I think it is very easy at a gut level. You mean the problem is that it falls squarely within? No, the problem is that at a very gut level, it's easy to say Ms. Hill tried to obstruct justice in this case. She lied and destroyed evidence. But that's not what the guideline requires. She concealed her relationship with her co-defendant, and then the court could consider that in light of the fact that you've got evidence that's withdrawn, and in the process of doing so, you then put the government in a position of having approval. Well, you have to, first of all, you have to disaggregate the content because there are different standards that apply to each type of conduct. So there is one standard that applies to false statements to law enforcement officers, and that is different than the standard that applies to destruction of evidence. Your argument would be a lot better had there only been one incident of or one type of what is obstructive conduct. Well, respectfully disagree. You can respectfully disagree, but you can't factually disagree. I said obstructive conduct. I didn't say obstruction of justice. Did evidence go, and isn't that clearly could be assigned? You may not like it, but it could be assigned to her because of her job. She lied to the investigators at least twice, I can think of. She concealed her relationship with her co-defendant. Do you argue that's not obstructive conduct? That is obstructive conduct. Well, then that's all that I said. But that is not obstruction of justice under 3C1.1. Well, it may or may not be. I said to you, your argument would be perhaps stronger if there was only one incident of obstructive behavior. That's what I said. You think not? You like having somebody that had four, five, or six incidents of obstructive behavior? I don't think you like that. I don't like representing someone in that situation. And I think it actually is a guideline. That's what I mean. I mean in the sense of making the argument. Well, in the sense of having to mitigate bad behavior. No, no, I want to get this straight. I'm asking you, wouldn't it be an easier argument to make to us on the enhancement if the defendant had been responsible for only one, there was only one incident of obstructive behavior? You want to argue with that point? I do respectfully because the— You disagree with that? Yes, because the way— when she's had at least four, five, or six incidents of obstructive behavior. It's not easier, but you have to analyze each one of those incidents of obstructive behavior and see where it fits in the guideline and whether it fits. So that makes it easier or harder for you? Well, it's harder because it's a larger task, but it's certainly feasible. And I think in this case it is because I think that we can challenge each of these obstructive acts because none of the acts actually meet the legal requirements that are set forth here and, as I started with, the court did not make the findings necessary for this court to even substantively review it. What I'm saying is, isn't it obvious? Can it not be obvious from the record for the basis for an obstruction? No, it cannot be obvious from the record, no. I think that is absolutely incorrect. No, I mean, and that's how sentencing works in general. The court can't— Well, listen to me. I sentenced people for 12 years. I know how sentencing works. If the fact of the obstruction is obvious— Apparent on the record. Excuse me? Apparent on the record. That's right. That can't be the basis for the judge to go, that act is obstruction of justice. Well, then I guess that I can ask a rhetorical question to the court, even though, respectfully, I don't see how it's obvious that her lying to the investigators hindered this instruction. Well, that's the second point. That's the second point. I'm just saying if it's obvious and apparent on the record, I think the judge clearly could properly give an obstruction enhancement. Now, you may argue that that doesn't exist in this record. That is correct. But actually, the court still has to actually make findings, Your Honor. I mean, when someone raises an issue at sentencing and someone argues, a defendant argues that a certain guideline does not apply, the court does not meet its responsibilities in sentencing by saying, I disagree. It applies. Well, we'll find that out, maybe. Maybe we'll find that out. If you think that this case teased it up to exactly that point, maybe we'll find out if that's so. Well, I do, Your Honor. If you take any other guideline enhancement, if it was abusive position of trust, which we admitted to in this case, let's say we argue that the abusive position of trust guideline did not apply. But the court just said on the facts of the testimony here, it's clear it's an abusive trust. I would argue that that wouldn't be procedurally reasonable as a sentence. But I think that what's unique about – Even though everybody agreed what the testimony was on that point, and that testimony was in the record, there still wouldn't be enough. Yes, I agree that that wouldn't be enough. Not under the more current case law, and this is really about procedural reasonableness and gall and what the Supreme Court has told us, is no. The court has to make findings, specifically when the defendant puts forth specific arguments about why. Why did any of that says the appeals court is supposed to act as if the trial court was completely ignorant of the obvious facts on the record? What Supreme Court case points to that? No case says that, but – I know they may think – they may not much of a lower court sometimes, but I don't think I've read that like that. But there is actually a case from this court. There's actually a case, I believe, from this court. Yeah, he may be correct, and I'll take that. There is a case from this court that I cite often in my more traditional procedural unreasonableness briefs, which says that the court of appeals is not supposed to be sleuth through the record looking for clues to support the district court's findings. So, no, they're not supposed to do that. I didn't say that. I didn't say sleuth. I said obvious and apparent on the record. And that could be true, Your Honor, but our argument here is that it is not obvious and apparent on the record. What do you think is the strongest claim of obstruction, although you don't think it makes the case? Which do you think is the strongest case? The destruction of evidence is the strongest claim, because if you could conclude, without it being factually erroneous, that Ms. Hill destroyed the records after the investigation started, that would be obstruction. What about the misstatements or lying to the investigators? There is no way in which her misstatements or lies hindered this investigation. The officer in this case, Agent Connolly, the inspector, did not rely to his detriment or the detriment of this investigation in any way on those statements. And, in fact, those statements actually cast greater suspicion on Ms. Hill. He testified to that, because they were so incredible. These statements were about… It's not the same thing. To say that it cast doubt on you does not necessarily mean it did not hinder the investigation. Well, I think it actually supports the conclusion that it did not hinder the investigation. Not necessarily so, though. Well, set that aside. It did not hinder this investigation. Speak to the statements. What are the statements again? Maybe I'm not remembering those statements. There were two different statements. The first is that after the investigation had been initiated, after Agent Connolly himself had tried to call the check pays and couldn't because the government system that has the contact information was down, Ms. Hill called him and also the bank investigators… She was being proactive. She was being proactive and said, I called them and they said, yeah, these two people who don't even live in Baltimore anymore, who don't work for Baltimore, they both know Robert Johnson and said that they endorsed their checks over to Robert Johnson. That in fact helped them to cast doubt on her? It was a completely incredible statement. So she was doing them a favor? Well, it doesn't matter what her intent was, Your Honor. That's quite important. Agent Connolly testified that it actually made him suspicious. That's not the same thing as saying it did it. Well, then let's flip. He said nothing about how it hindered his investigation. He went on with his investigation as he would have if she had never picked up the phone and called. It doesn't matter what her purpose was? It doesn't matter what her purpose was, no. It does not matter what her purpose was for lies to law enforcement. And this is an important point to make when you're talking about lies to law enforcement because in the application note, it actually says that false statements to law enforcement officers not made under oath are excluded from the enhancement unless the requirements set forth in note 4G apply. So with statements to law enforcement, this is actually a rule of exclusion, not a rule of inclusion. And then it gives a specific 4G, gives that specific exception of when you can apply a statement to law enforcement. And then it has to be materially false to a law enforcement officer, so not a bank investigator, and it has to have significantly obstructed or impeded the official investigation. And you can't ignore words in this guideline. And this is what canons of statutory construction apply here. If they meant significantly, they use the word significantly, and there is no evidence in the record of how her statement that she reached out to the payees or her denial that she knew her co-defendant significantly hindered this investigation. In every single check fraud case, the payees are contacted. Are those statements independent, following up on Judge Chish's question there? I mean, it would seem that if the conduct is, whether it makes it intent or obvious when you have more than one. It makes her intent more obvious, and maybe you want to punish her through an upward variance. There's actually an application note, note 3, that says that if there is obstructive conduct that does not rise to the level of this enhancement, that can be addressed by giving an appropriate sentence within the guideline range. So the application notes themselves actually contemplate that there are situations in which a defendant is going to engage in bad conduct, conduct that we don't like, that seems obstructive, but it's not what we intend when we created this guideline range. Isn't it really in the message of this argument, and arguments like this in the district court, is let the defendant win on every objection, but then just sentence what you think is the appropriate sentence. Because he gave you, didn't he give you a downward variance or departure in this case? She, I'm assuming the judge. Yes. The judge. Oh, the judge. Because the judge thought that was the appropriate sentence in the case. Why didn't the judge, why don't we just send it back, if he wanted to send it back, go judge, take away that enhancement, but still give him whatever number you think is appropriate. Well. It seems to me that's what sentencing is coming to. You know, respectfully, Your Honor, I disagree. I suspect that you would, but that doesn't mean it's not correct. I mean, this case can be sent back to the district court, but the reason to do that is to apply these guidelines. I mean, the sentencing commission doesn't write the guidelines. And by the way, they're just simply advisory, Your Honor. I understand that. And the purpose of sentencing is for the judge under 3553A, eventually, to find the appropriate sentence, individualized sentence for that defendant, correct? That's correct, except the judge must start with the guidelines. And this court has held that those guidelines. Not if the judge hands down an alternative sentence, the judge can go there. But the judge has to start with the guidelines. And actually, what the judge did in this case, when the judge announced the sentence. I know that, but my point is this. The bottom line is to give him exactly what the judge, our fair judges, think is the appropriate sentence. And you can do that by doing 3553A and then eliminating other arguments about technical arguments about, you know, the only person to make something, but let me finish. And that way it takes us back to maybe a more reasoned sentencing system, something that we had akin to pre-guidelines. But you'll have a chance to respond. You have five minutes. Thank you, Your Honor. Thank you very much. Ms. Fine? Good morning. My name is Tammy Fine. I was the AUSA who was responsible for prosecuting this case. The district judge in this case was Judge George. There was an acquittal on the wire charge here, I noticed. Pardon? There was an acquittal on the wire charge here. I assume that happened because you didn't have the paperwork. That is exactly right, Your Honor. I have to say I'm astonished to hear there was not a material hindrance to the prosecution when the fact that we didn't have the paperwork first, you read the trial transcript, you see, it required us to put on a lot more witnesses and have all of the witnesses talk about how she was the only one who did this paperwork and this is how she would have filled it out to show lots of examples. And then in the end, the jury did not, we did not have the piece of paper, the sets of paperwork for these two checks. We could not say, look at the handwriting. It's her handwriting. We couldn't say, we had a fingerprint expert look at it. And here are her fingerprints. Was any of this obstruction, though? Well, it's obstruction, Your Honor, because as Judge Russell found, it was in fact a preplanned obstruction. This is a person who indicated from the get-go that she would be able to thwart any investigation that came up because this was an account that she controlled and that she would have. But Ms. Silver said there were no findings to support obstruction. Oh, no, Your Honor. There absolutely were findings to support obstruction. And with regard to, with regard, for example, to the, sorry. One moment. Maybe she got ahold of your papers, too. No, no, no. No, I apologize. The judge's comments actually show the extent to which you really can't just separate this out to statements or documents. He really talks about the intertwining of them. He indicates at one point in the transcript that the documents were destroyed, that they were destroyed by her. He indicates that the fact that she didn't tell the truth and actually lied in the investigation, which caused them to have to confirm her statements with regard to the individual payees. Even if the delay was for a day, I mean, that day bought her a day to potentially grind the evidence. You know, as we look at this, and probably some of it hasn't come out yet, that is that when you look at the position Ms. Hill was in, it seems really interesting her position. She could not only approve these, but then issue the check. I mean, there's nothing in between it that sort of checked her in terms of that issuance of the check. And even when the investigators came, as I recall, she was the one they asked to investigate this. That was one of the ironies of the early investigation that she was handling. So you put all that together, and there's this apparent position she's in that seems to indicate, well, no one's going to question this because she's got both ends of it. And she says these statements. And, you know, I'm just trying to wrap my mind around the fact of non-obviousness, I guess, in terms of it happens once and you do it twice. But the counsel on the other side says, oh, no, this helped the officers because it cast her in a bad light, and this was not believable anyway. You only had two people out there, and everybody knew that. It wasn't true. Your Honor, I think that that's entirely false. It is true that the investigator indicated that the fact that someone reached out to him affirmatively within an hour of him going to the unit and said that they had been able to reach these people when he knew the system was down, alerted him and made him more suspicious. But, Your Honor, although it was fortuitous that the system was down, there were other ways to find these people. And the investigator, if he had not been told that everything was fine, the checks were fine, he might well have, instead of diverting his attention to finding the paperwork and focusing on that, focused on going to the location where that person had worked and finding out that day that, in fact, they had not ever requested the check and had not received the check and certainly hadn't signed it over. It's hard. It's very difficult to imagine a question that an investigator would add in any kind of investigation in which a person purposely gives a false answer that is material. It could be, you know, where did you go to high school or something just to set the tone for the conversation. But beyond that, I think any trained, it's obvious, any trained investigator takes every answer about the subject matter and then assesses that answer as to what to ask next or what to do next. That's absolutely right. And one of Justice Wynne, Judge Wynne mentioned earlier. Justice Wynne's fine. We have hope for her. We have hope for her. She and I long gave up those checks. We used to have it. We used to have it. They have it again. You mentioned the false statement about knowing her co-conspirator. Well, again, if you look at the transcript of the trial and Judge Russell sent through the whole thing, you would see that we had to get phone records for Mr. Johnson and ultimately for Ms. Hill as well. We had to get records reflecting their e-mails from both, to the extent we could, personal accounts and professional accounts. The agents spent a lot of time. There were 700 text messages between the two of them, over 700 telephone calls between the two of them, and he had to chart that all out, show the cluster of activities that happened on the day that she found out someone was looking at these checks. None of that would have been necessary. She didn't have to answer these questions. She didn't have to make the phone calls. No. She didn't have to do any of that. She certainly did not. And she did. And when you look at it in light of the evidence presented,  Now, the other side makes an argument, which she's entitled to do, that it doesn't meet the standards, which you say that it does. Your Honor, I absolutely do believe that it meets the standards. What do you think is the strongest basis for an obstruction enhancement? Your Honor, candidly, I think it's everything together. The fact that she had a plan in advance, and as soon as she found out there was an investigation, she took concrete steps to effectuate that plan to the ward. But if you want to break it down, Your Honor, with regard to the documents and the destruction of documents, it does matter when those documents were destroyed. And it is absolutely true that we don't know when they were destroyed. We never found them, and we never found any evidence of them, except for the fact that they had been filled out at some point in time in order for a check to be prepared. But in this case, Your Honor, if you look at the documents specifically and look at whichever standard you want to apply, if you're looking at the destruction of the documents before the investigation was revealed, conduct purposely calculated and likely toward the investigation or prosecution would be the standard. If you look at the investigation of documents even before an investigation, there would still be an enhancement. Exactly, and that's clearly set forth in Application Note 1, the second paragraph of that. And, Your Honor, we meet that standard, and that's the harshest standard of the three. And the court specifically used the word thwarting the investigation in his findings with regard to the obstruction of justice enhancement. If it's an enhancement that's based upon conduct happening at the time of arrest, in this case I think we've analogized that to the moment when she found out there was an investigation, then that can't be enough standing alone, and in this case it's not standing alone, but it can't be enough unless it resulted in a material hindrance to the official investigation or prosecution of the incident offense. And as we've indicated, it completely colored how the government had to prove this case. But is there any assertion that the destruction of documents happened at the time of arrest? Not at the time of arrest, Your Honor. And I would argue just deductively that it's unlikely it happened at the time that she became aware of the investigation. The sequence of events was the investigator went to speak with her boss, her boss then spoke with her, and then she went back, and almost immediately they were all looking for paperwork. So the paperwork would have been there or in her cubicle, which people also helped her search, if she had taken it that instant when she found out about the investigation. So the court found that it was at or about the time that she learned of the investigation, and I think she reached that simply because the last check was issued on July 31st. The bank investigator found out about what was going on and realized there were some irregularities on August 1st and left a message for the OIG investigator. I guess that the destruction of documentary evidence cases, generally the fact pattern would be some rough approximation of when it occurred, unless there is a co-conspirator or somebody happened to see somebody flushing documents down the toilet or something. That is absolutely correct, and the court found that Ms. Hill had a plan in place to thwart the investigation. She was responsible for the removal of the paperwork, the missing documents were material, and the fact it was missing hindered the investigation. That's the finding of the court on page 994 of the joint appendix. And I have to say, I'm also just, it is somewhat amusing or interesting that the loss of the paperwork is being questioned as not material. If this were a gun case, and you had a weapon that had been used to commit a murder. Let me just say this, let's don't get into murder. We've read your brief, we've heard your argument, is there anything else you'd like to add? We read your brief. No, Your Honor, thank you. Thank you very much. All the arguments that you have in there, we understand. Thank you. Ms. Silver? Thank you, Your Honor. Okay. It appears the government agrees with me that the only logical conclusion is that the paperwork was removed beforehand. And so again, it is very important if you read the text of the guideline that the court needed to find, not just that she intended to thwart the investigation, but that the removal of the paperwork was likely to thwart the investigation, not hinder the investigation, not make it more difficult for the prosecution to put on its case, not cause the prosecution, which it did, to have to call more witnesses to prove that she in fact was the only person who could have created that paperwork. That's not thwart. Thwart is much more than that. And you have to, again, applying canons of statutory construction, thwart is greater than hinder. Thwart means to stop, to undermine. And the court did not make a finding that her conduct was likely to have done that, and it wasn't, Your Honor. I want to address it's so easy for the government to say that because she was acquitted of the two substantive counts of wire fraud, that that was the thwarting. That has nothing to do with the removal of the paperwork. There is no way that the jury could have convicted her of the conspiracy to commit wire fraud had they not concluded that she was the one within that office who caused the checks to be issued. There were no other unindicted co-conspirators. There was nobody else alleged to have been working with her who could have created the check issuance paperwork. So the fact that they acquitted her of those two substantive counts has nothing to do with the fact that the paperwork was missing. What's more likely is that there was actually significant evidence of the fact that even though she fills out the paperwork, she's not in fact the person who takes the paperwork and goes on to the computer and accesses the database in another state, which causes the interstate commerce nexus, and prints the check. She doesn't do that. And so it may have been because of that fact that they got confused and acquitted her on those counts. I want to go back, though, Your Honor, to what you were discussing before about 3553A. Even if you say let's just do 3553A, that one of the factors you have to consider is the guideline range. That is one of the factors in 3553A. And the Supreme Court recently reminded us in Molina-Martinez how important starting with the correct guideline range is. And the court has said that over and over, and that is why there is a presumption that if the court sentences someone within the correct guideline range, even with a very thoughtful discussion of 3553A factors, there's no harmless error here. And even in the plain error context in the Molina-Martinez case. Well, that's not correct. You can sentence, you can have the guidelines completely wrong, and you can still have harmless error analysis here in the Fourth Circuit. You can, Your Honor, but not if the only evidence of that harmless error is that the judge carefully considered 3553A. You need a lot more than that. And that does not exist in this record. You need a lot more. Under the current law, you just need a guideline calculation. No, but the truth. It could be as wrong as anything. The judge could be wrong on 50 of 50 objections, and we still have harmless error analysis in this circuit. That's correct, Your Honor, but under that analysis, you actually would have to point to facts in the record to show that the court would have, and it's the government's burden, would have imposed the same exact sentence. Oh, that's correct. Right, and there is no evidence of that. No, I didn't say that. In this case. No, no, no. I was just suggesting in light of what the law is, how sentencing may well end up. Yes, and I understand that. And I do want to also just factually. You should understand this. It's very odd that we have a sentence, a range that has to be worked out and worked out and worked out. It's just advisory. It used to be mandatory. Now it's just advisory. I think the Supreme Court, in its wisdom, decided that it would maybe split the baby and say the guidelines weren't mandatory, but they still should be looked at. They were interesting, and that's what we find ourselves. And that's true, Your Honor. I don't want to take away too much time. No, it's okay. I guess in closing, what I would urge you to do is to go back and carefully read my briefs, because, again, I really encourage you to not fall prey to this desire, which is really appealing, to just overall say, eh, all of this together, oh, it must be obstruction. Let me suggest to you, you can rest assured, that we're going to look at it very carefully. And what we decide will be based on what we think the law is. Thank you, Your Honor. Not any confusion about your brief. Thank you. Okay. All right, thank you very much. We will adjourn court and then step down to brief counsel. This honorable court stands adjourned, sign and die. God save the United States and this honorable court.
judges: Dennis W. Shedd, G. Steven Agee, James A. Wynn Jr.